IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| JANE MOSS, individually and as Special Administrator of the Estate of Harry M. Moss, | OPINION AND ORDER<br><br>13-cv-42-bbc |
| Plaintiff, | |
| v. | |
| TRANE U.S., INC., | |
| Defendant. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Jane Moss filed this civil action on behalf of her deceased husband, Harry M. Moss, who died in 2013 from lung cancer. Plaintiff contends that her husband's cancer was caused by his exposure to asbestos-containing materials used to insulate and maintain boilers. Soon after the case was filed, it was transferred to the Eastern District of Pennsylvania for consolidated pretrial proceedings as part of multidistrict litigation. Now that the case has been remanded, defendant Trane U.S., Inc. has moved for summary judgment on two grounds. First, defendant argues that it did not assume the liabilities at issue when it purchased American Standard (a company that manufactured some of the boilers on which Moss worked). Second, defendant argues that it cannot be held liable because American Standard did not manufacture, distribute or specify the use of the asbestos-containing materials that caused plaintiff's injuries.

I am granting defendant's motion for summary judgment on the second of these two

1

grounds. Although I will not revisit Judge Eduardo Robreno's finding that defendant Trane assumed American Standard's liabilities, I agree with defendant that under the so-called "bare metals defense," it cannot be held liable for injuries that were caused by products American Standard did not manufacture, distribute or specify be used. To hold defendant liable for American Standard's failure to warn about the risks associated with third-party products based simply on the fact that American Standard could foresee the possibility that such products might be used in connection with its own products would amount to an unprecedented expansion of Wisconsin law governing the duty of care manufacturers owe to consumers.

From the parties' summary judgment materials and the record, I find that the following facts are material and not subject to genuine dispute.

UNDISPUTED FACTS

Harry Moss worked with various boilers in Wisconsin from approximately 1951 to 1968. His work brought him frequently into contact with asbestos-containing materials, such as asbestos-containing insulation, firebrick (a type of refractory material used to line boilers), gaskets and rope packing. On January 18, 2010, Moss learned he had lung cancer and asbestosis. He died less than a month later, on February 14, 2010. Plaintiff filed strict liability and negligence claims against thirteen companies, including defendant Trane U.S., Inc., as successor to American Standard, Inc.

American Standard previously manufactured and distributed various models of

boilers under the brand name "Kewanee." For the most part, Kewanee boilers were sold as "bare metal" products, that is, at the time of their sale, they were not insulated or lined with any asbestos-containing materials. All decisions regarding whether and how to insulate the boilers, whether to incorporate asbestos-containing refractory materials and whether to replace any of the boiler's components, were the responsibility of the person or entity purchasing, installing and maintaining the boilers. American Standard did not require, specify or recommend the use of asbestos-containing materials; and American Standard's Kewanee boilers were not designed specifically for asbestos-containing materials. Although some Kewanee boilers did contain certain original asbestos-containing components, such as gaskets and rope packing, these components would wear out and need to be replaced within one to two years.

Moss occasionally worked on Kewanee boilers, and as a result, was exposed to insulation and refractory materials that contained asbestos. Moss was also exposed to replacement gaskets for various boilers (including, potentially, Kewanee boilers) that may have contained asbestos. However, there is no evidence that any of these asbestos-containing materials were manufactured, distributed or specified by American Standard. Invariably, the gaskets, insulation and refractory materials Moss installed or removed from Kewanee boilers were manufactured, distributed and purchased by third-parties.

3

OPINION

A. Trane's Liability for American Standard's Alleged Negligence

A threshold issue is defendant's argument that it cannot be held liable for any claims related to Moss's exposure to asbestos because these liabilities were transferred to another company, Oakfabco, Inc., in 1970 when Oakfabco bought American Standard's Kewanee Boiler Division. According to defendant, as a result of this sale, American Standard had divested itself of the liabilities at issue before defendant and American Standard merged in 1984.

I am rejecting defendant's argument that American Standard had divested itself of all liability associated with Kewanee's boilers before defendant's merger with American Standard for the same reasons that Judge Robreno cited when he rejected this argument during the consolidated pretrial proceedings. In his order denying defendant's motion for summary judgment, and then again in his order denying defendant's motion for reconsideration, Judge Robreno found that the 1970 Purchase Agreement, which defendant contends transferred American Standard's liabilities to Oakfabco, "does not preclude American Standard's (and now, by way of merger, Defendant Trane's) liability for asbestos claims arising in connection with Kewanee boilers." Order Denying Mot. Summ. J., 13-cv-60004-ER, dkt. #117 at 6. Judge Robreno concluded that the 1970 Purchase Agreement transferred only liabilities that were "existing and outstanding as of [January 29, 1970]" and that the claims in this case did not accrue until after that date. Id. at 7. Defendant has not shown that Judge Robreno's ruling on this issue was clearly erroneous. Motorola Mobility,

4

Inc. v. AU Optronics Corporation, No. 09-C-6610, 2014 WL 258154, at **4-5 (N.D. Ill. Jan. 23, 2014) (applying "clear error" standard to motion asking transferor court to re-visit issues on remand that were decided by MDL court). Accordingly, defendant's motion for summary judgment on this issue is denied again. Winkler v. Eli Lilly & Co., 101 F.3d 1196, 1202 n.5 (7th Cir. 1996) ("It would vitiate much of the purpose of consolidating litigation if, after remand, parties could simply re-visit the transferee court's pre-trial rulings[.]").

### B. Merits

Plaintiff's complaint sets forth both strict liability and negligence claims against defendant Trane as successor to American Standard. Under Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938), I am required to apply Wisconsin state law when it comes to substantive matters governing these claims and federal law to any procedural issues. When applying state substantive law I must construe the law as enacted by Wisconsin's legislature and declared by Wisconsin's supreme court. Home Valu, Inc. v. Pep-Boys—Manny, Moe and Jack of Delaware, Inc., 213 F.3d 960, 963 (7th Cir. 2000). If the Wisconsin supreme court has not addressed a substantive issue in dispute, I must attempt to predict how it would decide the issue. Rodman Industries, Inc. v. G & S Mill, Inc., 145 F.3d 940, 942-43 (7th Cir. 1998). In attempting to discern how such an issue would be decided by the Wisconsin supreme court, "federal courts treat decisions by intermediate appellate courts as authoritative, unless . . . a split among those courts makes such treatment impossible, or unless there is a compelling reason to doubt that the courts have got the law right." Rekhi v. Wildwood Industries, Inc., 61 F.3d 1313, 1319 (7th Cir. 1995). Under this standard, I

will address each of plaintiff's two claims in turn.

1. <u>Plaintiff's strict liability claim</u>

Strict liability claims in a defective products case are governed by the standard set forth in the <u>Restatement (Second) of Torts</u> § 402A (1965), which Wisconsin adopted in <u>Dippel v. Sciano</u>, 37 Wis. 2d 443, 155 N.W.2d 55 (1967). Under § 402A and <u>Dippel</u>, a defendant can be held strictly liable for only those defects associated with products the defendant itself manufactured or distributed. As the state supreme court noted in <u>City of Franklin v. Badger Ford Truck Sales, Inc.</u>, 58 Wis. 2d 641, 649-50, 207 N.W.2d 866, 870 (1973), when a component part is "merely incorporated into something larger, and where the cause of harm or injury is found . . . to be a defect in the component part, we hold that . . . the strict liability standard applies to the maker and supplier of the defective component part." Plaintiff does not contend that Judge Robreno erred in finding that American Standard "was not the manufacturer or seller of the asbestos materials to which Moss was exposed." Order Denying Mot. Summ. J., 13-cv-60004-ER, Dkt. #117 at 7. Accordingly, plaintiff's strict liability claim fails as a matter of law.

2. <u>Plaintiff's negligence claim</u>

Under Wisconsin law, when presented with a motion for summary judgment in a negligence case, the court must engage in two basic inquiries. First, it must analyze whether the plaintiff has presented a genuine issue of material fact with respect to defendant's alleged negligence. <u>Hoida, Inc. v. M & I Midstate Bank</u>, 2006 WI 69, ¶ 23, 291 Wis. 2d 283, 717

N.W.2d 17. If the plaintiff carries her burden with respect to the defendant's negligence, the court must then consider whether, despite the defendant's negligence, there are public policy reasons for limiting the defendant's liability and precluding the plaintiff from recovering. Id. at ¶ 24. These two inquiries reflect the fact that Wisconsin law views questions of "negligence and liability [as] distinct concepts." Alvarado v. Sersch, 2003 WI 55, ¶ 17, 262 Wis. 2d 74, 662 N.W.2d 350. Here, summary judgment in favor of defendant is appropriate both because plaintiff failed to establish negligence and because public policy justifies limiting defendant's liability.

a. Plaintiff has failed to establish that defendant was negligent

Under Wisconsin law, a claim for negligence has four elements: (1) a duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury. Rockweit v. Senecal, 197 Wis. 2d 409, 418, 541 N.W.2d 742 (1995). Wisconsin courts have held that a defendant "ordinarily has a duty to exercise reasonable care when [his] conduct creates a risk of physical harm." Behrendt v. Gulf Underwriters Ins. Co., 2009 WI 71, ¶ 17, 318 Wis. 2d 622, 636, 768 N.W.2d 568, 575 (citing Restatement (Third) of Torts: Liability for Physical Harm § 7a). However, determining whether a defendant's duty of ordinary care required it to engage in a particular course of conduct (or conversely, whether the defendant's failure to engage in a particular course of conduct *breached* its general duty of ordinary care) requires the court to look at the specific circumstances of the case. Hoida,

Inc., 2006 WI 69, ¶ 32 ("[W]hat is within the duty of ordinary care depends on the circumstances under which the claimed duty arises. For example, what is comprised within ordinary care may depend on the relationship between the parties or on whether the alleged tortfeasor assumed a special role in regard to the injured party."). Here, plaintiff's negligence claim fails because under the circumstances of this case, American Standard's duty of care did not require it to warn plaintiff about the risks associated with the asbestos-containing products that harmed plaintiff.

Plaintiff argues that American Standard's duty of care required it to warn Moss about harms associated with third-parties' asbestos-containing products because it was "foreseeable" that contractors and maintenance personnel would be installing or removing such materials from American Standard's boilers. Relying on A.E. Investment Corp. v. Link Builders, Inc., 62 Wis. 2d 479, 484, 214 N.W.2d 764, 766 (1974), plaintiff contends that it is irrelevant that the asbestos-containing materials that harmed Moss were manufactured, distributed, selected and purchased by third-parties; all that matters is that American Standard could have *foreseen* that these materials might be used and that they could cause harm. Plaintiff's attempt to define the scope of American Standard's duty by looking exclusively at the foreseeability of harm is misguided.

First, although some Wisconsin case law has held that a duty of care arises whenever it is foreseeable that a defendant's inaction may cause harm, e.g. id. ("A defendant's duty is established when it can be said that it was foreseeable that his act or omission to act may cause harm to someone"), the Wisconsin supreme court revisited and clarified the

8

relationship between foreseeability and duty in <u>Behrendt</u>, 2009 WI 71, 318 Wis. 2d 622, 768 N.W.2d 568.  In <u>Behrendt</u>, the Wisconsin supreme court noted that its approach is consistent with the approach set forth in Section 7, Comments I and j of the <u>Restatement (Third) of Torts</u>.  <u>Behrendt</u>, 2009 WI 71, ¶ 20 ("Though some language in prior Wisconsin cases invokes foreseeability inquiries in connection with duty . . . the approach set forth in Section 7, Comments I and j, is most consistent with the approach we have taken on the issue of duty in the vast majority of our cases.").  Section 7, Comments i and j explicitly reject the proposition that a defendant's duty of care is tied to whether the plaintiff's alleged harm was foreseeable.  Thus, plaintiff is wrong to contend that American Standard's duty of care arose from the fact that it was foreseeable that Moss might handle asbestos-containing products while working on American Standard's Kewanee boilers.

Furthermore, imposing a duty to warn based on foreseeability alone is inconsistent with the well-recognized tort principle that there is no general "duty to rescue" absent a judicially-recognized special relationship.  In other words, an individual has no obligation to prevent harms that may or will befall others, regardless of the likelihood and foreseeability of those harms, unless those harms are in some way attributable to the individual's conduct. <u>See</u> <u>Restatement (Second) of Torts</u> § 314 (1964) ("The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action."); <u>Restatement (Third) of Torts</u> § 7 cmt. l (1998) ("The general duty rule contained in this Section is conditioned on the actor's having engaged in conduct that creates a risk of physical harm. . . . In the absence of conduct

9

creating a risk of harm to others, an actor ordinarily has no duty of care to another.").

Rather than defining duty based on foreseeability, the Wisconsin courts have held that every individual must act in accordance with "a standard of ordinary care in all activities." Strasser v. Transtech Mobile Fleet Service, Inc., 2000 WI 87, ¶ 58, 236 Wis. 2d 435, 459-60, 613 N.W.2d 142.  When the defendant is a "manufacturer," satisfying this general standard of care requires the defendant to provide warnings about risks that it knows are associated with the use of its products.  Id.  This "duty to warn" is set forth in Wis JI-Civil 3242, Negligence: Duty of Manufacturer to Warn, which provides:

> A manufacturer of a product has a duty to exercise ordinary care to warn of dangers which he or she knows, or should know, are associated with the proper use of a product. This duty exists whether or not the product was properly designed. "Proper use" means a use which is intended by the manufacturer. In addition, a manufacturer has the duty to warn of dangers inherent in a use not intended by the manufacturer if such unintended use is reasonably foreseeable by the manufacturer.

Wis JI-Civil 3242.  These jury instructions, which reflect the Wisconsin courts' adoption of Restatement (Second) of Torts § 388, Strasser, 2000 WI 87, ¶ 58, indicate that the focal point of a manufacturer's duty to warn is on the risks and dangers associated with the use of the products *it* manufactured.  See Restatement (Second) of Torts § 388 (1965) ("One who supplies . . . a chattel for another to use is subject to liability to those whom the supplier should expect to use *the chattel* . . . or to be endangered by *its* probable use[.]").  There is nothing in either Wis JI-Civil 3242, or the Restatement provision on which that instruction is based, to suggest that the manufacturer's duty to warn includes an obligation to warn users about dangerous products manufactured by third-parties.

Courts in Wisconsin have recognized consistently that a defendant's duty to warn is generally limited to the risks associated with its products, not the products of third-parties, regardless whether the use of those third-party products is foreseeable. For example, in Schreiner v. Wieser Concrete Products, Inc., 2006 WI App 138, 294 Wis. 2d 832, 720 N.W.2d 525, a farmer was injured when a silo collapsed after it was loaded higher than the silo's bunker walls. The plaintiff sued the manufacturer of the plastic sheeting that was used to cover the silage, claiming that it had a duty to warn plaintiff of the allegedly foreseeable risk that the silo might collapse if overloaded. Id. at ¶ 14. The Wisconsin Court of Appeals disagreed. It held that, consistent with Restatement (Third) of Torts § 5 (1998), a manufacturer is required to warn individuals about the risks associated with third-parties' products only when (1) those risks are attributable to the fact that the third-parties' products were integrated into its own and (2) the manufacturer participated in integrating the two products. Schreiner, 2006 WI App 138 ¶ 15 ("No party argues that the plastic sheeting was in any way defective. Also, no party contends that [defendant] participated in integrating the plastic sheet into the silo system and that integration caused the silo system to be defective. Therefore, [defendant] had no duty to warn regarding general safe use of the silo system."). Here, as in Schreiner, the asbestos-containing products that harmed plaintiff were neither manufactured nor distributed by American Standard, and their dangerous propensities were not attributable to the fact that they were used in connection with American Standard's boilers. Moreover, there is no evidence that American Standard participated (either actually or constructively through some form of specifications) in

11

integrating the asbestos-containing materials into the boiler. Accordingly, defendant cannot be held liable for failing to warn about the dangers associated with the third-party asbestos-containing products plaintiff handled.

Plaintiff relies primarily on Spychalla v. Boeing Aero Operations, Inc., No. 11-cv-497, 2015 WL 3504927 (E.D. Wis. June 3, 2015), another asbestos case remanded by Judge Robreno for further proceedings on the "bare metals" defense. In Spychalla, Judge Robreno found that the plaintiff had produced evidence that her husband, Leonard Spychalla, came into contact with various asbestos-containing materials while working as aircraft mechanic between 1966 and 1991. Spychalla, 2015 WL 3504927 at *2. However, much as he did in this case, Judge Robreno also found "there [was] no evidence that Mr. Spychalla was exposed to respirable asbestos dust from a component part original to the defendants' aircrafts or engines or that any replacement part to which he was exposed was manufactured or supplied by the defendants." Id. Accordingly, the defendant aircraft manufacturers moved for summary judgment on the "bare metal defense." Id.

In denying the defendants' motion for summary judgment after remand from the court overseeing the multidistrict litigation, Judge William Griesbach said that it was unclear whether the bare metals defense applied, for two reasons. First, he noted that the plaintiff could proceed on a potential design defect claim based on the fact that the defendant aircraft manufacturers had all incorporated original asbestos-containing components into their aircrafts. Id. Although similar reasoning might arguably apply in this case (the Kewanee boilers had asbestos-containing gaskets and rope packing that may have rendered the boilers

defective), plaintiff does not appear to be proceeding on a design defect claim on remand. Moreover, even if plaintiff were to allege that American Standard defectively designed its boilers, such a theory would fail because there is no evidence that the original asbestos-containing materials installed by American Standard caused plaintiff's injuries. E.g. O'Neil v. Crane Co., 266 P.3d 987, 995-96 (Cal. 2012) ("[Plaintiff] was also exposed to asbestos from the replacement gaskets and packing inside the pumps and valves. Yet, uncontroverted evidence established that these internal components were not the original parts supplied by [defendants]."); Thurmon v. A.W. Chesterton, Inc., 61 F. Supp. 3d 1280, 1286 (N.D. Ga. 2014) (granting defendant's motion for summary judgment because "there is no evidentiary factual basis to support the conclusion that the asbestos-containing replacement parts to which the decedent was allegedly exposed were Crane products"). Here, any asbestos-containing gaskets or rope packing plaintiff handled were manufactured, purchased and installed on Kewanee's boilers by unknown third-parties.

Second, Judge Griesbach refused to apply the bare metals defense on the ground that the defendant aircraft manufacturer specified the use of asbestos-containing replacement parts. Spychalla, 2015 WL 3504927 at *4. Other courts have similarly found that a defendant can potentially be held liable for failing to warn about the risks associated with dangerous third-party components that they specify for use with their products. Quirin v. Lorillard Tobacco Company, 17 F. Supp. 3d 760, 769-70 (N.D Ill. 2014) ("In general . . a manufacturer is not liable for materials it did not supply. But a duty may attach where the defendant manufactured a product that, *by necessity*, contained asbestos components . . .

essential to the proper functioning of the defendant's product, and where the asbestos-containing material would *necessarily* be replaced by other asbestos-containing material, whether supplied by the original manufacturer or someone else." (emphasis added)); Sparkman v. Gould Pumps, Inc., No. 2:12-cv-02957-DCN, 2015 WL 727937, at *3 (D.S.C Feb. 19, 2015) (denying motion for summary judgment on ground that South Carolina state law would impose duty to warn when manufacturer specified the use of asbestos containing replacement parts). However, even if I were to agree that a manufacturer has a duty to provide warnings when it specifies or requires the use of dangerous third-party components, plaintiff has failed to present evidence sufficient to show that American Standard specified or required the use of the asbestos-containing material that harmed plaintiff in this instance.

In her proposed findings of fact, plaintiff proposes as fact that "Kewanee's 'regular catalogue specifications' called for a boiler to be 'covered with two inches of asbestos insulation.'" PPOF ¶ 17, dkt. #50. In support of this proposed fact, plaintiff cites the deposition testimony of Mary Jane Mahoney, an American Standard secretary, which was offered in a 2001 case then pending in Texas. Id. In her deposition, Mahoney was simply asked to read from a "Kewanee Boiler bulletin" from April 30, 1938. According to Mahoney's deposition testimony, this 1938 bulletin stated that a specific type of Kewanee boiler (a 1938 Kewanee Type C Boiler) was "set in accordance with the regular catalog specifications and covered with two inches of asbestos insulation." This single snippet of testimony falls far short of creating a genuine issue of material fact with respect to whether American Standard had specified the use of the asbestos-containing materials that harmed

14

Moss.

First, this evidence is inadmissible. The document itself is not before the court; plaintiff has offered no foundation for either the document or Mahoney's testimony; and Mahoney testified that she was not familiar with the document. Alexander v. Casino Queen, Inc., 739 F.3d 972, 978 (7th Cir. 2014) ("[D]epositions from one case may be used at the summary judgment stage of another . . . [if] the testimony is based on personal knowledge and sets out facts that would be admissible at trial, and the deponent is competent to testify on these matters."). Second, the document is ambiguous in that it merely says a particular boiler was (1) installed "in accordance with regular catalog specifications" and (2) covered with asbestos insulation. The document does not say that covering a boiler with asbestos insulation is *one of* the boiler's specifications. Third, plaintiff has presented no evidence that Moss worked on the type of boiler for which this alleged "specification" applied. Harris v. Owens-Corning Fiberglass Corp., 102 F.3d 1429, 1432 (7th Cir. 1996) ("A plaintiff does not meet [his] burden simply by establishing that he inhaled asbestos dust; rather, he must produce evidence tending to show that he inhaled asbestos produced by the *defendant's* product."). Thus, plaintiff has failed to present sufficient evidence that American Standard specified, required or even recommended the use of the asbestos that caused Moss's injuries so as to avoid summary judgment.

b. Public policy supports limiting Trane's liability

Limiting Trane's liability in this case is also consistent with the public policy considerations that the Wisconsin supreme court has identified as appropriate to consider

15

when determining whether to limit defendants' liability in a negligence case. In <u>Rockweit</u>, 197 Wis. 2d at 426, the court held that a court may limit liability in a negligence case as a matter of law when (1) the injury is too remote from the negligence; (2) the injury is too wholly out of proportion to the tortfeasor's culpability; (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; (4) allowing recovery would place too unreasonable a burden upon the tortfeasor; (5) allowing recovery would be too likely to open the way to fraudulent claims; or (6) allowing recovery would have no sensible or just stopping point.

Of particular importance in this case is the sixth factor: whether "allowing recovery would have no sensible or just stopping point." <u>Rockweit</u>, 197 Wis. 2d at 426. For example, if plaintiff were to hold American Standard liable for failing to warn about the risks of asbestos based on nothing other than the fact that it was "foreseeable" that asbestos insulation might be used, nothing would stop plaintiff from next filing suit against the steel mill that supplied the steel used to construct the Kewanee boilers. (Certainly, the steel mill could foresee that American Standard would use the steel to make boilers, and that those boilers might be insulated with dangerous asbestos.) Plaintiffs' expansive failure to warn theory would soon find its way into other industries as well: paint brush manufacturers will be sued for failing to warn individuals about the risks associated with lead paint; companies that make cigarette lighters will face suit for failing to warn people about the dangers of smoking; and orange juice distributers will be expected to warn consumers of alcohol-related dangers because it is foreseeable that someone might mix orange juice with vodka. In

16

essence, "allowing recovery would impose liability for failure to warn in situations in which the decision whether to warn is fraught with difficulty and in which no just and sensible legal guidelines are available to limit liability." Gritzner v. Michael R., 2000 WI 68, ¶ 35, 235 Wis. 2d 781, 798, 611 N.W.2d 906, 915.

The fourth factor—whether allowing recovery would place too unreasonable a burden upon the tortfeasor—also weighs in favor of limiting defendant's liability. It is simply too much to demand that a product manufacturer anticipate which third-party products will be used in connection with its own, determine how frequently all of those products will be used, investigate the risks associated with all of those products and then craft warnings or product use instructions for both the safe use of the manufacturer's products *and* the safe use of the third-party's components. O'Neil, 266 P.3d at 1006 ("A contrary rule would require manufacturers to investigate the potential risks of all other products and replacement parts that might foreseeably be used with their own and warn about all of these risks. . . . Such a duty would impose an excessive and unrealistic burden on manufacturers."). Additionally, if product manufacturers are required to write warnings that account for the risks associated with the use of third-party components, they would need to make sure that the risks identified in such warnings are consistent with the warnings supplied by the third-parties themselves. Perversely, the confusion associated with multiple, potentially inconsistent, warnings might cause more harm than having too few warnings. Id. ("[Imposing a duty to warn] could also undermine consumer safety by inundating users with excessive warnings. To warn of all potential dangers would warn of nothing.") (internal citations and quotations

17

omitted).

Thus, I conclude that even if American Standard's failure to warn plaintiff of the risks associated with the use of asbestos constitutes negligence, defendant is nevertheless entitled to summary judgment on the ground that public policy supports limiting the liability of manufacturers that did not manufacture, distribute or specify the products that caused a plaintiff's injuries.

ORDER

IT IS ORDERED that defendant Trane U.S., Inc.'s motion for summary judgment, dkt. #36, is GRANTED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 9th day of March, 2016.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge